UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>NATHAN WILLIAM JUHALA,<br><br>　　　　　Defendant. | CR. 17-50032-JLV<br><br>ORDER |

**INTRODUCTION**

　　　Defendant Nathan Juhala, appearing *pro se*, filed a motion for compassionate release together with a proposed release plan, a packet of his personal information and an administrative request for informal resolution of sick call requests.  (Dockets 51, 51-1 & 51-2).  Pursuant to Amended Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on his motion.  (Dockets 52-53, 55, 59, 59-1 through 59-3, 62 & 64).  Mr. Juhala also filed a *pro se* supplement in response to his attorney's supplemental brief.  (Docket 65).  For the reasons stated below, defendant's motion is denied.

**AMENDED STANDING ORDER 20-06**

　　　Amended Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions

---

[1]See https://www.sdd.uscourts.gov/socraa.

under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system." (ASO 20-06 at p. 1). By the standing order, the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id.

¶ 4. Those categories are:

    a.    High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § 1.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

    b.    Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

    c.    Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

    d.    Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id. The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id.

## MR. JUHALA'S CLASSIFICATION

The FPD and the U.S. Attorney filed a notice designating Mr. Juhala as an Intermediate Priority case. (Docket 52).

## FACTUAL BACKGROUND

Mr. Juhala pled guilty to attempted enticement of a minor in violation of 18 U.S.C. § 2422(b). (Dockets 38 & 49). On February 5, 2018, Mr. Juhala was sentenced to a term of imprisonment of 120 months followed by five years of

2

supervised release.  (Dockets 47 & 49 at pp. 2-3).  A presentence investigation report ordered by the court calculated Mr. Juhala's advisory guideline range as 70 to 87 months of imprisonment based on a total offense level of 27 and his criminal history category I.  (Docket 44 ¶ 45).  However, by statute a mandatory minimum sentence of ten years applied.  Id.  The court sentenced Mr. Juhala to the mandatory minimum sentence.

Mr. Juhala is currently an inmate at FCI Pekin, a medium security facility in Pekin, Illinois.  Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last checked June 24, 2022).  The inmate population at FCI Pekin is currently 1,041 persons with an additional 210 inmates in Camp F for a total inmate population of 1,251.  https://www.bop.gov.locations/institutions/pek/ (last checked June 24, 2022).  As of June 24, 2022, there is one active COVID-19 case among inmates and no active cases among staff at FCI Pekin.  https://www.bop.gov/coronavirus/ (last checked June 24, 2022).  FCI Pekin reported one death of an inmate and no staff deaths as a result of COVID-19, and 804 inmates and 115 staff have recovered as of June 24, 2022.  Id.

Mr. Juhala has a scheduled release date of August 23, 2025.  https://www.bop.gov/inmateloc/.  See also (Docket 53 at p. 148).  As of June 24, 2022, he has served approximately 53.6 percent of his statutory sentence, and under his current status in the BOP, Mr. Juhala is eligible for home detention on February 23, 2025.  Id. at p. 145.  Mr. Juhala is 71 years old.  Id.

## MR. JUHALA'S MOTION

Mr. Juhala's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his "age . . . physical and mental/psychological health, and . . . high susceptibility to the COVID-19 virus." (Docket 51 at p. 5). He asserts having trouble walking, low back pain, weight loss from an unknown cause and celiac disease. Id. He also asserts having diagnoses of depression and bipolar. Id.

The FPD filed a supplement to his *pro se* motion. (Docket 59). Mr. Juhala, through counsel, argues defendant is now 71 years old and served over half of his statutory sentence. Id. at p. 1. While Mr. Juhala initially stated he had not made a request for compassionate release to the warden, Docket 51 at p. 3, his attorney indicates Mr. Juhala submitted a request to the warden on September 10, 2021. (Docket 59 at p. 3). Since more than 30 days have now passed without a response from the warden, Mr. Juhala submits this is "enough under 18 U.S.C. § 3582(c)(1)(A)." Id. (referencing United States v. Houck, 2 F.4th 1082, 1083-84 (8th Cir. 2021)).

Mr. Juhala contends his age coupled with his "difficulty walking, . . . chronic lower back pain, Celiac Disease, age-related cataracts, macular degeneration, a tremor, . . . depression and bipolar disorder" constitute "an extraordinary and compelling reason to reduce his sentence." Id. at p. 6. He offers that "[a]ccording to the Centers for Disease Control and Prevention ("CDC"), individuals 70 years old are five times more likely to be hospitalized

4

for COVID-19, and 90 times more likely to die from COVID-19." Id. at p. 7 (referencing *Risk for COVID-19 Infection, Hospitalization, and Death By Age Group, CDC.* https://www.cdc.gov/coronavirus/2019-ncov/covid-data/ Investigations-discovery/hospitalization-death-by-age.html). While Mr. Juhala received his second COVID-19 vaccination shot, he has not received a booster shot as recommended by the CDC. Id. at p. 8. Mr. Juhala submits he "remains at risk while . . . incarcerated and the court should act . . . to keep him safe." Id.

Addressing the 18 U.S.C. § 3553(a) factors, Mr. Juhala argues he timely took responsibility for his criminal conduct and pled guilty. Id. He also suggests his criminal conduct was the result of his wife's untimely death and his failure to seek professional help "to process her death in [a] healthy manner." Id. Mr. Juhala asks the court to consider his United States Army service and honorable discharge. Id. at p. 9. In addition, Mr. Juhala points out he "has had no disciplinary violations during his time in prison . . . . has completed several educational and interpersonal classes while in custody . . . . [and] has a safe and stable place to stay when released from prison." Id.

For all these reasons, Mr. Juhala seeks a "sentence of time served . . . combined with a period of home confinement as a condition of release." Id. In his view, Mr. Juhala "is at high risk of developing serious complications if he contracts the virus, and he is at a facility with a demonstrated history of alarming case rates." Id.

In response, the government acknowledges Mr. Juhala's age and that he has "received both his vaccinations and has been fully immunized against COVID-19." (Docket 62 at p. 1). Addressing the defendant's age-related health conditions, the government contends "[n]one of these conditions," including Celiac Disease, "are on the CDC's list of conditions that can be more likely" to cause an individual to become "severely ill from COVID-19." Id. at p. 2 (internal quotation marks omitted; referencing https://www.cdc.gov/ coronavirus/2019-ncov/need-extraprecautions/people-with-medical-conditions.html).  While acknowledging depression and bipolar disorder are identified by the CDC as conditions more likely to cause an individual to be severely ill, the government points out he has "reported excellent relief of symptoms [of depression] with current [medications] . . . and requested to continue the same doses[.]" Id.  For these reasons, the government submits Mr. Juhala "cannot meet his burden of 'extraordinary and compelling' circumstances warranting a reduction in his sentence based upon his depression, bipolar disorder, or age." Id. at pp. 2-3.

The government argues the court is bound by the "policy statement . . . set forth at United States Sentencing Guidelines . . . ["USSG"]. . . § 1B1.13." Id. at p. 4.  The government submits the court is bound by the Sentencing Commission's "explicit examples of what constitutes an 'extraordinary and

6

compelling circumstance[.]"² Id.   Those are: "(A) medical condition of the defendant"; "(B) age of the defendant"; "(C) family circumstances"; and "(D) other reasons." Id. at pp. 4-5 (citing USSG § 1B1.13 cmt. n.1; bold and capitalization omitted).  Without specifically addressing each of these guideline factors, the government contends the defendant has not met his burden of proof and his "request for sentence reduction is not warranted . . . and should not be granted, despite any medical conditions." Id. at p. 6.

The government further contends the § 3553(a) factors do not support release because Mr. Juhala "is a danger to the community." Id. at p. 11.  In addition to the facts of his crime of conviction, attempted enticement of a minor using the internet in violation of 18 U.S.C. § 2422(b), the government points out the defendant admitted using his laptop to access child pornography and he had a firearm in his home. Id. at pp. 11-12.   The government also contends Mr. Juhala "has not served a substantial portion of his sentence. . . . [And] the nature of the crime does not warrant . . . [a] reduction." Id. at p. 12.  To reduce Mr. Juhala's sentence in the government's view "would not be a deterrent and would create a disparity in sentencing as to other similarly situated individuals." Id. at pp. 12-13.

---

²While recognizing some "district courts disagree about whether the First Step Act alters the binding nature of USSG § 1B1.13," the government argues " 'the limited statutory exceptions to the general rule of finality of judgment' counsels in favor of following the Sentencing Commission's guidance." Id. at p. 4 n.2 (citing United States v. Eberhart, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020); other references omitted).

In reply, Mr. Juhala points out the government did not address or "dispute that [his] motion is ripe for this court's consideration." (Docket 64 at p. 1). Defendant contends the government fails to acknowledge that with the reduction of effectiveness over time with the Pfizer vaccine, the "number of breakthrough cases have occurred, . . . over 41,000 have resulted in hospitalizations and/or death. The results of breakthrough infections have been particularly concerning for those aged 65 or older with that population composing 85% of the deaths and 66% of the hospitalizations." Id. at pp. 1-2 (referencing *COVID-19 Vaccine Breakthrough Case Investigation and Reporting*, https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html). Defendant submits his "age, health, the rapidly changing COVID-19 pandemic, and FCI Pekin's inability to keep inmates safe, place him at continued risk of serious health complications or even death." Id. at p. 5. "Based on his precarious health, Mr. Juhala respectfully requests an order reducing his sentence to time served under 18 U.S.C. § 3582(c)(1)(A)." Id. at p. 6.

## ANALYSIS

### Administrative Exhaustion

Section 3582(c) permits the district court to consider an inmate's request for compassionate release after he exhausts the administrative remedies mandated by the statute. 18 U.S.C. § 3582(c)(1)(A)(i). The government does not contend Mr. Juhala failed to exhaust his administrative remedies. See

generally Docket 62.  Accordingly, the court will address the merits of Mr. Juhala's request.

### Extraordinary and Compelling Reasons

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020).  That task was left to the United States Sentencing Commission.  See 28 U.S.C. § 994(t).  Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  See id.  Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling.  U.S.S.G. § 1B1.13 comment. n.1.  The four categories have not been updated since December 2018 when the First Step Act became law.[3]

The court previously surveyed the status of the law as to a court's authority under the First Step Act.  E.g., United States v. Thunder Hawk, CR. 14-50008, 2021 WL 253456, at *5 (D.S.D. Jan. 26, 2021); United States v.

---

[3]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two short of the four it needs to amend the [U.S.S.G.]."  United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

Magnuson, CR. 15-50095, 2020 WL 7318109, at \*4-5 (D.S.D. Dec. 11, 2020); United States v. King, CR. 15-50050, 2020 WL 6146446, at \*4-5 (D.S.D. Oct. 20, 2020).  A summary of that survey is sufficient here.

This court retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release."[4] E.g., Magnuson, 2020 WL 7318109, at \*5 (quoting United States v. Brooker, 976 F.3d 228, 237 (2d. Cir. 2020)); see also McCoy, 981 F.3d at 283 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."); United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); and United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with the Second

---

[4]The United States Court of Appeals for the Eighth Circuit had several opportunities to address this issue but declines to do so.  United States v. Vangh, 990 F.3d 1138, 1141 n.3 (8th Cir. 2021); United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. 2020) and United States v. Rodd, 966 F.3d 740 (8th Cir. 2020).  At best, the Eighth Circuit skirted resolving the issue by proclaiming "the First Step Act in 2018 did not change the discretion afforded the district court."  United States v. Marcussen, 15 F.4th 855, 859 (8th Cir. 2021) (internal citation omitted).

Circuit that the Guidelines Manual "does not curtail a district judge's discretion").

In June 2022, the United States Supreme Court held "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." Concepcion v. United States, 597 U.S. ___, 142 S. Ct. 2389, 2404 (2022). The Supreme Court went on to conclude that "[i]t follows, under the Court's sentencing jurisprudence, that when deciding a First Step Act motion, district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' arguments." Id.

Turning to that task, the court conducted a detailed review of Mr. Juhala's medical records. Mr. Juhala's medical records confirm the following medical conditions:

- Stomach ulcer. (Docket 53 at p. 2);

- Gastro-esophageal reflux disease [GERD] with esophagitis, without bleeding. Id.;

- Depression. Id. at p. 10;

- Bipolar disorder. Id. at p. 35;

- Low back pain.[5] Id. at p. 62;

---

[5]Because of his low back pain, Mr. Juhala was assigned a walker "for stability and safety on the compound" and to avoid "[f]requent falls with injury." Id. at p. 55.

11

- Macular degeneration and age-related cataracts. Id. at p. 61; and

- Celiac disease.6 Id. at p. 86.

None of Mr. Juhala's physical or medical conditions are identified by the CDC as potentially increasing the risk of severe illness from COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 27, 2022). Absent an at-risk medical condition, the court concludes Mr. Juhala's medical conditions do not constitute "extraordinary and compelling reasons" to warrant compassionate release.

The CDC advises that depression and other "schizophrenia spectrum disorders can make you more likely to get very sick from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Mr. Juhala reports receiving excellent relief of his depression symptoms with the current medications and asks to be continued on those same medications.

---

6Celiac disease is an immune reaction to eating gluten, a protein found in wheat, barley and rye. Eating gluten triggers an immune response in your small intestine. Over time, this reaction damages your small intestine's lining and prevents it from absorbing some nutrients, causing diarrhea, fatigue, weight loss, bloating and anemia, and can lead to serious complications. While there is no cure for celiac disease, following a strict gluten-free diet can help manage symptoms and promote intestinal healing. https://www. mayoclinic. org%2Fdiseases-conditions%2Fceliac-disease%2Fsymptoms-causes%2Fsyc- 20352220&usg=AOvVaw0V9313AmRUGMf4AW4nJXnu (last visited June 27, 2022). Mr. Juhala refused a gluten free diet provided by food service at FCI Pekin. (Docket 53 at pp. 6-7).

(Docket 53 at p. 10). Those medications are Buspirone and Fluoxetine. Id. at pp. 11-12. Mr. Juhala's chart indicates the same two medications manage his bipolar disorder. Id. at p. 35.

The court also recognizes Mr. Juhala is currently 71 years old. Id. at p. 1. The CDC recognizes the risk of severe illness as a result of COVID-19 increases with age, with older adults at higher risk. See *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (updated Aug. 4, 2021) (last checked June 27, 2022). "Getting very sick means that older adults with COVID-19 might need hospitalization, intensive care, or a ventilator to help them breathe, or they might even die. The risk increases for people in their 50s and increases in 60s, 70s, and 80s. People 85 and older are the most likely to get very sick." Id.

Mr. Juhala received two doses of the Pfizer vaccine.[7] (Docket 53 at p. 67). The CDC reports "[p]eople 65 and older who received both doses of either Pfizer or Moderna vaccines showed a 94% reduced risk of COVID-19 related hospitalization." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. Overall, the BOP records show that Mr. Juhala is generally healthy and has not required significant medical care while incarcerated. Mr. Juhala's general concern about

---

[7]There is no evidence in his chart that Mr. Juhala received a Pfizer COVID-19 booster shot since the second immunization of March 23, 2021. (Docket 53, *passim*).

incarceration during the age of COVID-19 is understandable, but not an "extraordinary and compelling reason" justifying release.  The court finds Mr. Juhala has not met his burden of proof and presented "extraordinary and compelling reasons" based on his medical conditions, age, and conditions of confinement warranting a sentence reduction under § 3582(c)(1)(A)(i).

The court also recognizes the BOP's implementation of a COVID-19 vaccination program and administration of vaccines to inmates and staff.  *BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last checked June 27, 2022).  The BOP has administered 359,874 doses of vaccine systemwide as of June 27, 2022, and the number continues to rise.  Id.

The court understands Mr. Juhala's concern of being incarcerated during the age of COVID-19.  Nevertheless, Mr. Juhala does not present "extraordinary and compelling" reasons for compassionate release.

### 3553(a) Factors

The court concludes the § 3553(a) factors do not support relief.  These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from further crimes of the defendant, among others.  18 U.S.C. § 3553(a)(1)-(7).

In addition to the information supporting Mr. Juhala's guilty plea, the factual basis statement in the case acknowledged his possession of a laptop computer used to access child pornography and possession of a firearm in his residence. (Docket 44 ¶ 4). A psycho-sexual evaluation conducted for sentencing purposes when Mr. Juhala was 66 years old identified him, even at that age, to be "in the medium group for sexually reoffending." (Docket 43 at p. 7). Prepared by a highly respected psychologist, the report concluded "[t]he data gained from the sexual interest test . . . was significant for objectively measured sexual interest in grade school age females and early adolescent age females and males." Id. This measure of prediction of sexual recidivism risk is of grave concern to the court. The court is not convinced close monitoring of Mr. Juhala would be sufficient to protect the community from further harm or criminal conduct.

The court sentenced Mr. Juhala to 120 months, the statutory minimum sentence. (Docket 44 ¶ 45 & 49 at p. 2). That sentence reflects the seriousness of his offense, provides appropriate punishment, promotes respect for the law and hopefully deters criminal conduct. After consideration of all the § 3553(a) factors, the court concludes those factors do not support a motion for compassionate release. To his credit, Mr. Juhala appears to be on the right path and sincerely devoted to learning from this time in custody. (Docket 53 at pp. 128, 135-136 & 143-144).

**ORDER**

No good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 51) is denied.

Dated July 29, 2022.

                BY THE COURT:

                /s/ *Jeffrey L. Viken*
                JEFFREY L. VIKEN
                UNITED STATES DISTRICT JUDGE